FRYE, Appellee,

v.

WEBER & SONS SERVICE REPAIR, INC., Appellant.

[Cite as *Frye v. Weber & Sons Serv. Repair, Inc.* (1998), 125 Ohio App.3d 507.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 72164 and 72555.

Decided Feb. 2, 1998.

508

*Berger & Kirschenbaum* and *Robert W. Todt,* for appellee.

*Louis J. Licata* and *Ellyn Tamulewicz,* for appellant.

Sᴘᴇʟʟᴀᴄʏ, Judge.

Defendant-appellant, Weber & Sons Service Repair, Inc. ("appellant"), appeals the jury verdict permitting plaintiff-appellee, Katherine Frye ("appellee"), to participate in the State Insurance Fund. Appellant further appeals the trial court's denial of its motion for judgment notwithstanding the verdict. Appellant assigns the following errors for our review:

"I. The trial court should have entered judgment for Weber because appellee failed to satisfy her evidentiary burdens in two respects: (1) appellee did not offer medical testimony to a reasonable degree of medical certainty for the purpose of establishing proximate cause; and (2) even assuming the admissibility of appellee's medical evidence, appellee did not satisfy the three-prong test detailed in *State ex rel Ohio Bell Telephone Co. v. Krise.*

"II. The trial court committed reversible error by failing to remedy the inconsistency between the general verdict and the jury's response to interrogatory no. 2, which indicated that appellee was predisposed to contracting carpal tunnel syndrome and ulnar nerve neuropathy, by either returning the jury additional deliberations or by entering judgment for Weber.

"III. The trial court erred by permitting appellee to introduce the unsigned deposition transcript of Dr. Levy at trial."

Finding appellant's appeal to lack merit, we affirm the judgment of the trial court.

I

The issue presently before this court is whether appellee has a right to participate in the State Insurance Fund for injuries that she claims were sustained in the course of her employment with appellant.

On or about January 24, 1995, appellee was diagnosed with a work-related injury, bilateral carpal tunnel syndrome and bilateral ulnar neuropathy. Subsequently, appellee filed a claim for workers' compensation benefits with the Industrial Commission. Appellee's claim was denied on March 22, 1995. Appellee appealed this order. On June 22, 1995, the district hearing officer heard appellee's appeal and issued an order denying appellee's claim. Again, appellee appealed the denial of her claim to the Industrial Commission. A hearing was held before the staff hearing officer, and appellee's second appeal was granted on August 25, 1995. Appellant appealed the decision of the staff hearing officer on September 1, 1995. On October 10, 1995, appellant's appeal was refused.

On December 15, 1995, pursuant to R.C. 4123.512, appellant filed a notice of appeal and complaint with the Cuyahoga County Court of Common Pleas. A jury trial was conducted on February 3, 1997, and, on February 6, 1997, the jury returned a verdict in favor of appellee permitting her to participate in the State Insurance Fund. Appellant appealed the jury verdict to this court on March 7, 1997, case No. 72164.

On February 12, 1997, appellant filed a motion for judgment notwithstanding the verdict. The trial court denied appellant's motion on April 17, 1997. On May 19, 1997, appellant appealed the denial of its motion for judgment notwithstanding the verdict to this court, case No. 72555. Appellant's appeals were consolidated by this court on June 17, 1997.

II

On December 21, 1994, after completing her formal training at Ohio Diesel Technical College, appellee began working for appellant as a mechanic apprentice. In this capacity, appellee testified that she had access to wrenches, open-end pliers, filter wrenches, air ratchets, and an air-powered grease gun. Appellee further stated that she performed such duties as working on exhaust systems, rotating tires, changing oil, lubricating, checking fluids and performing brake jobs. For the most part, appellee testified that she performed her specific tasks unsupervised.

In early January 1995, appellee testified that she began feeling numbness and tingling in her hands. Further, appellee noticed that she began dropping tools and that she did not have the strength to do the tasks required of her. Appellee testified that the pain continued to increase. Eventually, the pain was so bad that appellee decided to go to the emergency room. An x-ray was taken and revealed that appellee had carpal tunnel syndrome and ulnar neuropathy.

In early February 1995, appellee was referred to Dr. Levy, a hand and plastic surgeon. Levy eventually performed surgery on both of appellee's arms and wrists to relieve the pressure which she was experiencing.

Levy, by video deposition, testified at trial. He stated that he originally saw appellee for her hand condition on February 14, 1995, and that he performed the initial surgery on February 23, 1995. When asked whether the use of hand tools like those used by auto mechanics could cause carpal tunnel syndrome, Levy responded affirmatively. Further, Levy, on two separate occasions, was asked and responded affirmatively that appellee's work as a mechanic apprentice could have been the direct and proximate cause of her carpal tunnel syndrome and ulnar neuropathy.

Joseph L. Weber, Jr., testified at trial as well. Weber testified that he is the owner of Weber & Sons and that he hired appellee. Weber stated that appellee's first day of work was December 21, 1994, and that appellee also worked December 22, 1994. Appellee did not perform mechanic-related activities on either of these days. Appellee's third and fourth days of work were December 28 and 29 1994. She did not engage in any mechanic-related work on December 28, but did perform approximately three-tenths of an hour of mechanic-related work on December 29. Weber's records further revealed that appellee worked January 3, 4, 5, 6, and 7, 1995, before she eventually went to the emergency room for the pain she was feeling in her wrists and hands. In total, appellee had worked for appellant for nine days before the date of her official diagnosis of carpal tunnel syndrome and ulnar neuropathy.

Finally, the testimony of Dr. Stanley Dobrowski was heard at trial. Dobrowski reviews claims for the Bureau of Workers' Compensation. Appellee's claim was among those reviewed by Dobrowski. Although Dobrowski did not treat or examine appellee, he testified that he did not believe appellee's alleged diagnosis was work-related based on the fact that appellee had only worked for appellant for a very short period of time. Dobrowski stated that one month was not enough time to develop carpal tunnel syndrome.

## III

In its first assignment of error, appellant contends that the trial court erred in overruling its motion for judgment notwithstanding the verdict. In particular, appellant maintains that appellee failed to prove that her employment was the direct and proximate cause of her conditions.

Civ.R. 50(A)(4) states:

"When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most

strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ Thus, a motion for a directed verdict requires the trial court to construe the evidence most strongly in favor of the party against whom the motion is directed, and to sustain the motion only if reasonable minds could come to but one conclusion, adverse to that party, upon the evidence submitted. Civ.R. 50(A)(4); *Wise v. Timmons* (1992), 64 Ohio St.3d 113, 592 N.E.2d 840.

In *State ex. rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, the Ohio Supreme Court set forth a tripartite test to be applied to determine whether an occupational disease claim is compensable. The *Krise* requirements have been incorporated into the present version of R.C. 4123.68.

" 'Occupational disease' means a disease contracted in the course of employment, which by its causes and characteristics of its manifestation or the condition of employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner than the public in general." R.C. 4123.01(F).

The pertinent language of R.C. 4123.68 is as follows:

"The following diseases are considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section. A disease which meets the definition of an occupational disease is compensable pursuant to this chapter though it is not specifically listed in this section."

As R.C. 4123.68 indicates, it contains a list of diseases which *per se* are considered occupational. However, carpal tunnel syndrome is not a disease specifically enumerated in the statute. Thus, the definition of "occupational disease" set forth in R.C. 4123.01 is applicable in the instant case. We look to the entire record to determine whether appellee presented substantial evidence upon which reasonable minds could differ to meet the statutory definition.

In the case *sub judice,* appellee testified on her own behalf and had the videotaped deposition of Dr. Levy played before the jury. Appellee testified that she began her employment with appellant on December 21, 1994. During her employment, appellee stated, she performed various tasks, including working on exhaust systems, rotating tires, changing oil, lubricating, checking fluids and

performing brake jobs. Appellee further testified that she used numerous types of tools in performing her tasks. In particular, appellee testified as to her use of air impact tools, which release many pounds of air pressure when the trigger is pulled. Because these air impact tools are held in the hand, it is the hands, wrists, and arms that absorb the impact of the release. Appellee stated that she used air impact tools most of the time, but also used wrenches when an air impact tool was not necessary.

Appellee stated that as time went on things got harder for her. In particular, appellee stated that she started dropping her tools, her hands were going numb and tingly, and she did not have the strength to perform the tasks required by appellant. Appellee also began having sharp, shooting pain up her arm. On January 8, 1995, appellee sought treatment for her pain at the hospital emergency room.

Appellee presented Dr. Levy's testimony next. Levy testified that he had performed the surgery on appellee's hands and that in his medical opinion appellee's symptoms of carpal tunnel syndrome were related to her work for appellant. In addition, Levy was asked:

"Q: And, doctor, do you have an opinion to a reasonable degree of medical certainty based on a history provided to you in that which you obtained whether Katherine Frye's diagnosed conditions of the bilateral carpal tunnel syndrome and the ulnar neuropathy were the direct and proximate result of her employment as an auto mechanic for Weber & Sons Service and Repair Company?

"A: Based on my records and my recollection I would have to make the assumption that it was, yes."

Levy further explained that carpal tunnel syndrome can be caused in a number of different ways. However, the most common cause of carpal tunnel syndrome is overuse of the hands, as in appellee's case. Levy also stated that carpal tunnel syndrome can be caused by using hand tools like those used by an auto mechanic, or exposure to repeated jolts or blunt forces to the hands or wrists, especially in the case of exposure to a jolt received by an air pressure tool if frequently performed.

█ In the present case, appellant initially argues that Levy's testimony failed to establish that appellee's employment was the proximate cause of her carpal tunnel syndrome and ulnar neuropathy. In particular, Levy did not express his opinion to a reasonable degree of medical certainty. Appellant's argument in this respect fails.

█ It is well settled that an expert testifying on the issue of proximate cause must state an opinion with respect to the causative event in terms of

probability. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. An expert is not required to recite any particular "magic words," but his testimony, when considered in its entirety, must be equivalent to an expression of probability. *Hampton v. Eckhart* (Nov. 19, 1991), Montgomery App. No. 11976, unreported, 1991 WL 244678. Expert opinions on the issue of causation which are not expressed in terms that are at least the equivalent of probability must be excluded as speculative. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430, 504 N.E.2d 44.

Levy on two separate occasions was asked his opinion, within a reasonable degree of medical certainty, of what he believed the direct and proximate cause of appellee's bilateral carpal tunnel syndrome and ulnar neuropathy to be. Levy, on both occasions, responded that appellee's carpal tunnel syndrome and ulnar neuropathy were related to her employment.

In our opinion, the particular questions asked to Levy and the answers elicited in response to these questions satisfied the requirement that an expert opinion be stated in terms of probability. Thus, the trial court did not err in allowing Levy's testimony on this basis.

Next, we will address appellant's contention that appellee failed to satisfy the three requirements set forth in *Krise, supra*, 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756. In light of the overall record, it is our opinion that appellee presented evidence indicating that she contracted carpal tunnel syndrome and ulnar neuropathy in the course of her employment with appellant, "which by its causes and characteristics of its manifestation or the condition of employment results in a hazard which distinguishes the employment in character from employment generally." R.C. 4123.01(F).

Appellee also produced evidence indicating that her employment as a mechanic apprentice could create a risk of contracting the diseases of carpal tunnel syndrome and ulnar neuropathy in a greater degree and in a different manner than in the public generally. As the court stated in *Patterson v. Connor* (1984), 19 Ohio App.3d 304, 307, 19 OBR 476, 479, 484 N.E.2d 240, 243:

"[W]hether a claimant's employment places her in a greater risk of contracting the disease in a greater degree and in a different manner than in the public generally, is based on the claimant's own particular kind of employment, not on employment of a similar nature generally."

In *Krise, supra*, the Ohio Supreme Court quoted *LeLenko v. Wilson H. Lee Co.* (1942), 128 Conn. 499, 503, 504, 24 A.2d 253, 255, 256, stating:

" 'The phrase "peculiar to the occupation" is not here used in the sense that the disease must be one which originates exclusively from the particular kind of

employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations * * *.' * * *

" 'We cannot import into the conception of occupational disease under our law the element that the disease must be a usual or generally recognized incident of the employment. Compensation under our law is not to be denied because the injury would not have occurred except for the peculiar susceptibility of the individual worker. * * * There is nothing in the terms of our statutory definition of an occupational disease which suggests that to fall within it a disease must be one which is a usual or generally recognized incident of the employment, and the considerations we have suggested preclude our finding that such a legislative intent is to be implied.' " *Krise,* 42 Ohio St.2d at 250–251, 71 O.O.2d at 228, 327 N.E.2d at 759. See, also, *Upshaw v. Cent. Foundry Div., Gen. Motors Corp.* (1992), 82 Ohio App.3d 636, 640, 612 N.E.2d 1283, 1286.

Because there was substantial evidence upon which reasonable minds could differ, we believe the trial court acted properly in denying appellant's motion for judgment notwithstanding the verdict. Accordingly, appellant's first assignment of error is overruled.

## IV

In its second assignment of error, appellant maintains that the trial court erred in failing to remedy the conflict existing between the jury's verdict and the jury's answer to Interrogatory No. 2. In particular, appellant maintains that the jury verdict and the jury's answer to Interrogatory No. 2 contradicts the holding of the Ohio Supreme Court in *Brody v. Mihm* (1995), 72 Ohio St.3d 81, 647 N.E.2d 778:

In *Brody,* appellant, a self-employed dentist, filed an occupational disease claim with the Industrial Commission, alleging that the requirement of constantly working in awkward positions aggravated a preexisting arthritic condition. At trial, expert testimony was introduced indicating that appellant's arthritic condition was caused by the aging process but aggravated and accelerated as a result of his employment. Appellant's claim was denied both administratively and on review by the trial and appellate courts.

On appeal, the Ohio Supreme Court affirmed the lower court's denial of appellant's claim. The court explained its rationale as follows:

"Even if we were to hold compensable a claim for wear-and-tear aggravation of a nonoccupational disease, the claimant would have to show that the employment contribution is legally, as well as medically, sufficient to give rise to a compensable disability. This would require a showing that the workplace exertion or

cumulative workplace exertions are greater than those encountered in ordinary nonemployment life.

"The ordinary physical stresses and strains of claimant's dental practice, as a matter of law, are no greater than those which are encountered in ordinary nonemployment life * * *. In addition, the wear and tear caused by claimant's employment did not rise to the level of a separately compensable injury or occupational disease pursuant to *Oswald* [*v. Connor* (1985), 16 Ohio St.3d.38, 16 OBR 520, 476 N.E.2d 658] * * *" (Citations omitted.). *Brody,* 72 Ohio St.3d at 83–84, 647 N.E.2d at 780–781.

In the present case, the jury answered the following interrogatory in the affirmative:

"INTERROGATORY NO. 2. Was Katherine Frye predisposed to contracting carpal tunnel syndrome and ulnar nerve neuropathy?"

We believe *Brody* is distinguishable from the instant case. In *Brody,* the claimant's preexisting disease was nonoccupational in nature. In the instant case, testimony was introduced that appellee's carpal tunnel syndrome and ulnar neuropathy were related to her employment and were, therefore, occupational in nature. We find this distinction to be critical and believe it renders *Brody* inapplicable to the case before us. Accordingly, we find appellant's contention that a preexisting disease that is aggravated during employment is not compensable is misplaced, and the jury's conclusion that appellee was predisposed to contracting carpal tunnel syndrome and ulnar neuropathy was not in conflict with its general verdict. We further find that the record supports the jury's conclusion in both instances.

Appellant's second assignment of error is overruled.

## X

■ In its third assignment of error, appellant contends that the trial court erred when it refused to suppress Levy's unsigned videotape deposition.

In the case *sub judice,* the depositional testimony of Levy was introduced by way of videotape; a transcribed copy is also in the record.

■ A trial court enjoys broad discretion in the admission and exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. Therefore, our review is limited to determining whether the trial court abused its discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. The term "abuse of discretion" connotes a judgment that is rendered with an unreasonable, arbitrary, or unconscionable attitude. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202,

205. In determining whether an abuse of discretion exists, a reviewing court should presume that the trial court was correct. *In re Jane Doe* 1 (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185.

We find that the trial court did not abuse its discretion in permitting appellee to introduce the videotape deposition of Levy. At trial, "any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were present and testifying, may be used against any party who was present or represented at the taking of the deposition." Civ.R. 32(A). Civ.R. 32(A)(3) states that the deposition of a witness "may be used by any party for any purpose," if the court finds that one of seven criteria apply. One of these criteria is that "the witness is an attending physician or medical expert." Civ.R. 32(A)(3)(e). Levy was appellee's treating physician and was qualified as a medical expert.

In the present case, appellant maintains, however, that the deposition of Levy was not properly before the jury because Levy failed to sign the deposition. The jury, however, did not receive the transcribed deposition of Levy. Rather, the jury viewed the videotaped version of Levy's deposition.

C.P.Sup.R. 12(A)(8) sets forth the following:

"Certification of Original Videotape Deposition. The officer before whom the videotape deposition is taken shall cause a written certification to be attached to the original videotape. The certification shall state that the witness was fully sworn or affirmed by the officer and that the videotape is a true record of the testimony given by the witness. If the witness has not waived his right to a showing and examination of the videotape deposition, the witness shall also sign the certification."

In the present case, Levy was informed by the video technician that he had a right to review the videotape or he could waive that right. In response to the video technician's question, Levy waived his right to review the videotape deposition. Subsequently, the videotape deposition was shown to the jury after the trial court heard and ruled on the parties' objections.

Initially, we note that appellant did not object to the lack of Levy's signature on the certification of the videotape deposition. Further, because Levy expressly waived any viewing of the videotape deposition, we cannot find the trial court's denial of appellant's motion to suppress the videotape deposition was an abuse of discretion. Accordingly, appellant's third assignment of error is overruled.

*Judgment affirmed.*

DYKE, P.J., and NAHRA, J., concur.