JOURNAL ENTRY and OPINION
{¶ 1} Michael Lanier, by and through his mother and next friend, Sharon Petty,[1] appeal from the Cuyahoga Court of Common Pleas' judgment granting appellees'[2] motion for a directed verdict on Lanier's negligence claim. Appellants assign the following as errors for our review:
 {¶ 2} "The Trial Court Erred in Granting a Directed Verdict.
 {¶ 3} "The Trial Court Erred in Overruling Plaintiff's Motion fora New Trial.
 {¶ 4} "The Trial Court Erred in Overruling Plaintiff's Motion toStrike Defendant's Reply Brief to Plaintiff's Motion for a New Trial."
 {¶ 5} Having reviewed the record and pertinent law, we reverse the decision of the trial court and remand this matter for proceedings consistent with this opinion. The apposite facts follow.
 {¶ 6} On January 9, 1998, Dr. Curioca circumcised Michael, then approximately eight months of age, at Mt. Sinai Hospital. On September 17, 1998, Michael underwent a second circumcision by another doctor to remove excess foreskin.
 {¶ 7} The necessity of the second circumcision was a pivotal issue before the trial court. Appellants claim this second procedure was medically necessary because Dr. Curioca negligently failed to remove excess foreskin, and Michael suffered resultant infections; appellees claim the second procedure was merely cosmetic and the infections stemmed from a cause other than the first circumcision.
 {¶ 8} In support of their theory, appellants presented the expert testimony of Dr. Lee Rubinstein who performed approximately three thousand circumcisions using the Gomco technique, the same as that used on Michael. Appellants presented Dr. Rubinstein's testimony to establish that Dr. Curioca deviated from the accepted standard of care and that such deviation probably caused Michael's infections.
 {¶ 9} After Dr. Rubenstein testified, the trial court granted appellee's motion for a directed verdict "since there was no expert testimony that defendants' alleged deviation from the standard of care was to a reasonable degree of medical certainty, probability, more probable than not, or more likely than not as required by Ohio law." In other words, the trial court decided appellants failed to demonstrate a probability existed that appellees' conduct was the proximate cause of Michael's injuries.
 {¶ 10} Appellants subsequently moved for a new trial. The court denied appellants' motion and this appeal followed.
 {¶ 11} In their first assigned error, appellants argue the trial court erred in granting a directed verdict because Dr. Rubinstein's testimony properly expressed a probability that Michael's injury resulted from the appellees' deviation from the accepted standard of care. We agree.
 {¶ 12} Under Civ.R. 50(A)(4), a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party.[3]
 {¶ 13} A motion for directed verdict raises the legal question of whether the plaintiff presented evidence legally sufficient to submit the case to the jury.[4] When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence or the credibility of the witnesses.[5] "If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied."[6]
 {¶ 14} The opinion testimony of an expert witness regarding proximate causation is competent only if expressed in terms of probability.[7] "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue."[8]
 {¶ 15} In this vein, no magic word such as "probability" or "certainty" is required.[9] Rather, we view the expert's testimony in its entirety to determine whether it expresses a probability that the complained of conduct proximately caused the alleged injury.[10]
 {¶ 16} Dr. Rubinstein opined as to the applicable standard of care, that a breach of that standard occurred, and that the breach probably caused Michael Lanier's injuries. As to the issue of proximate causation, the following dialogue is persuasive:
 {¶ 17} "PLAINTIFFS' ATTORNEY: In your opinion, why did you think the child developed a penile infection at that time?
 {¶ 18} "DR. RUBINSTEIN: Well, my understanding of this is that this is relatively uncommon to get a genital infection in a child from straight forward diarrhea.
 {¶ 19} "So I feel that the redundant foreskin was a focal point for those organisms and increased the chances of the patient getting an infection in that area.
 {¶ 20} "* * *.
 {¶ 21} "Q: How do you think this child developed a bacterial infection of the penis?
 {¶ 22} "A: Well, there is this excess tissue. It is a focal point and perfect target for bacteria that exists when the baby has a lot of diarrhea and so on.
 {¶ 23} "Q: * * *. What do you mean by [focal point]?
 {¶ 24} "A: Well, a piece of tissue like this, you know, we all know that, in the diaper of a baby, that's having this kind of problem, that there are a lot of organisms. Normally, * * * they * * * don't get an infection of their penis. So there was something about this circumstance which I think had to do with the foreskin that was a tracking point, or focal point for these organisms.
 {¶ 25} "Q: If the foreskin that was removed from the second procedure had been removed in the original procedure, would that have lessened the risk of contracting this infection?
 {¶ 26} "A: It is my opinion, it would have been much less likely."
 {¶ 27} We are mindful not to consider the weight of this or any other evidence; the question we resolve is simply whether appellants presented substantial and competent evidence, via Dr. Rubinstein's testimony, pertaining to the probability of causation.
 {¶ 28} We answer this question in the affirmative. Dr. Rubinstein expressed that the first circumcision fell below an accepted standard of care and that a probability exists that the first circumcision caused the alleged injuries. Although Dr. Rubinstein never used the words "probability" or "certainty," the entirety of his testimony clearly indicates that such a probability exists. Thus, construing the evidence most strongly in favor of appellants, we determine reasonable minds could reach more than one conclusion as to whether appellants presented substantial competent evidence linking Michael's infection to the first circumcision. Accordingly, the trial court erred by granting appellees' motion to dismiss, and appellants' first assigned error has merit.
 {¶ 29} Our resolution of appellants' first assigned error moots the remaining issues on appeal.
 {¶ 30} Judgment reversed and cause remanded to the trial court for proceedings consistent with this opinion.
This cause is reversed and remanded.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANN DYKE, J., CONCUR.
[1] Collectively appellants.
[2] Dr. Jazniya Curioca, Dr. Ori Kushnir, and Mt. Sinai Medical Center.
[3] Wagner v. Midwestern Indemnity (1998), 83 Ohio St.3d 287,294.
[4] Id.
[5] Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679.
[6] Id.
[7] Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus.
[8] Id.
[9] Frye v. Weber Sons Service Repair, Inc. (1998),125 Ohio App.3d 507, 514.
[10] Id.