OPINION
{¶ 1} Appellant, Brian Mraz, appeals a decision of the Brown County Court of Common Pleas granting permanent custody of his daughter to the Brown County Department of Jobs and Family Services ("BCDJFS"). We affirm the decision of the trial court.
 {¶ 2} Rosie Marie Mraz was born on September 28, 1999 to Roseanne Marie DeGan. Although Rosie's birth certificate did not name her father, appellant's paternity was later established as part of the permanent custody proceeding. Appellant and DeGan had two other children together. However, by the time Rosie was born these two children had been placed in the custody of DeGan's mother, upon a finding by the Clermont County Court of Common Pleas, Juvenile Division, that they were dependent children. Appellant and DeGan had also been involved with Mahoning County Children's Protective Services due to allegations of neglect. Appellant was incarcerated at the time of Rosie's birth and had no contact with her until July 2000 when he was released and he and DeGan again took up residence together. DeGan died unexpectedly on October 5, 2000, and Rosie was left in appellant's care.
 {¶ 3} BCDJFS received a complaint alleging that appellant had custody of Rosie, that paternity had not been established, and that appellant was not mentally stable enough to care for Rosie. BCDJFS discovered that appellant had an extensive criminal record, including multiple charges of receiving stolen property, interfering with custody, contributing to delinquency, theft, robbery and burglary. Further investigation revealed that Clermont County Children's Services had recently been involved with appellant. The agency's records reflected four substantiated allegations of sexual abuse, one indicated neglect and one substantiated neglect, all with regard to appellant's two older children who were later removed from his custody.
 {¶ 4} BCDJFS subsequently filed a complaint alleging that Rosie was a neglected, abused, and dependent child and Rosie was removed from appellant's custody on October 16, 2001. After a hearing on the matter Rosie was adjudicated a dependent child and BCDJFS was granted temporary custody. The agency placed Rosie in the custody of Robert Mraz, appellant's brother, and Mraz's girlfriend, Valerie Couch. Appellant was permitted to visit with Rosie under the supervision of either Mraz or Couch.
 {¶ 5} A case plan was developed and adopted by the trial court with the goal of reunifying appellant and Rosie. The case plan required appellant to establish paternity, complete parenting classes, participate in individual counseling to address issues related to anger control and grief, complete a drug and alcohol abuse assessment, undergo a psychiatric examination, and to maintain safe and stable housing. As well, a guardian ad litem was appointed to represent the child's best interest.
 {¶ 6} Appellant largely complied with the case plan requirements. His paternity was definitively established and he completed a series of parenting classes. His drug and alcohol screen revealed no present abuse. He participated in individual counseling and underwent a psychiatric examination. However neither his counselor nor the examining psychiatrist could recommend that he regain custody of Rosie. Both found that appellant had limited cognitive reasoning abilities, was mildly mentally retarded, and felt that appellant lacked the emotional stability necessary to parent a young child.
 {¶ 7} Meanwhile, Mraz and Couch relinquished custody of Rosie and BCDJFS placed her with Lori Willis, appellant's sister, who lives in Lake County, Ohio. Notably, appellant visited Rosie only once after she was placed in Willis' custody in January 2001. Appellant took up residence with his new girlfriend and her two children from a previous relationship. BCDJFS caseworkers who visited their home found it to be clean and safe. Although appellant was employed part time with United Van Lines and also receiving Social Security disability benefits, he failed to provide any financial support for Rosie during this proceeding.
 {¶ 8} BCDJFS moved for permanent custody of Rosie on August 20, 2001. The motion cited appellant's chronic emotional instability, lack of parenting skills, criminal history, and failure to visit or financially support the child.
 {¶ 9} Throughout this proceeding appellant was represented by counsel. Twice the trial court appointed counsel on his behalf and twice appellant retained private counsel. Each time he discharged, or attempted to discharge, his attorney. At the final hearing on the permanent custody motion, appellant informed the trial court that he wished to fire his appointed counsel and secure a continuance in order to retain new counsel. Counsel likewise moved the trial court for permission to withdraw. The trial court took the motion under advisement and the hearing proceeded as scheduled with appellant represented by appointed counsel. At the conclusion of the matter the trial court sustained the permanent custody motion, granting custody to BCDJFS. Appellant appeals, raising three assignments of error:
Assignment of Error No. 1
"The trial court's grant of permanent custody of Rosie Mraz to the Brown County Department of Family and Children's Services was against the manifest weight of the evidence."
 {¶ 10} Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state for permanent custody seeks not merely to infringe that fundamental liberty interest, but to end it. Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769,102 S.Ct. at 1403. A trial court's judgment terminating parental rights and awarding permanent custody to an agency will not be reversed as against the manifest weight of the evidence if it is supported by clear and convincing evidence. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, paragraph three of the syllabus.
 {¶ 11} Appellant specifically argues that the trial court's decision granting the permanent custody motion is contrary to the manifest weight of the evidence because he complied with all of the case plan requirements. He contends that completion of the case plan requirements mandates that the permanent custody motion be denied. We disagree.
 {¶ 12} R.C. 2151.414(E) states in pertinent part: "* * * If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 13} Consequently, the issue is not whether the parent has substantially complied with the case plan, but "whether the parent has substantially remedied the conditions that caused the child's removal."In re Shchigelski (Oct. 20, 2000), Geauga App. No. 99-G-2241, quoting Inre McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015. It is well-established in Ohio that the completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. See id; In re Porter, Summit App. Nos. 21080 and 21089, 2002-Ohio-4860; In re Lewis Children (Aug. 2, 1999), Stark App. No. 98-CA-00316; In re Dettweiler (Nov. 1, 1993), Stark App. No. CA-9244.
 {¶ 14} The state concedes that appellant participated in the services mandated by his case plan. However, the record reveals that, despite appellant's participation in numerous services and compliance with his case plan, he failed to substantially remedy the problems causing Rosie to be removed from his home. In making this conclusion, the trial court stated that "the psychological and emotional makeup of [appellant] prevents the formulation of a course of treatment that would permit the return of the child to a safe home environment within a reasonable time." This conclusion is supported by evidence in the record.
 {¶ 15} Dr. Joseph Cresci, who completed a psychological evaluation of appellant, diagnosed appellant as mildly mentally retarded and as having antisocial personality disorder. Dr. Cresci presented the following conclusion to the trial court:
 {¶ 16} "[Appellant] is a cold, hostile, very impulsive and unpredictable man who has absolutely no ability to relate to other human beings. He has no social skills and no ability to empathize or understand another person's feelings or needs. It is my belief that [appellant] is paranoid and should be considered dangerous. He perceives himself to be the victim of other people's mistreatment and has very little ability to take responsibility for his behavior or to understand his role in difficulties with others. His judgment is extremely poor."
 {¶ 17} Pam Parker, a licensed independent social worker, presented a similar diagnosis to the trial court, finding that appellant was antisocial and mildly mentally retarded. Both professionals concluded that appellant was untreatable. Dr. Eugene Smiley, a licensed professional counselor, taught parenting courses which appellant attended. While Dr. Smiley observed that appellant regularly attended the courses, he expressed doubt as to whether appellant was able to retain or apply the skills he learned in the courses. Dr. Smiley's ultimate recommendation was that appellant not be given the responsibility to care for children.
 {¶ 18} There was also evidence in the record of appellant's unstable mental health history, extensive criminal history, and history of involvement with children's services agencies in multiple Ohio counties. Further, there was evidence presented that appellant failed to visit Rosie for extended periods of time, seeing her only once in a one-year period. Nor did he provide financial support for the child during the pendency of this proceeding. Finally, the child's guardian ad litem strongly recommended that the permanent custody motion be granted.
 {¶ 19} Upon a thorough review of the record, we conclude that the trial court's decision is not contrary to the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.
Assignment of Error No. 2
"The trial court should not have admitted Dr. Joseph Cresci Jr.'s deposition into evidence."
 {¶ 20} In his second assignment of error, appellant contends that Dr. Cresci's deposition was taken for discovery purposes and thus should not have been admitted in evidence at the permanent custody hearing.
 {¶ 21} A trial court enjoys broad discretion in the admission and exclusion of evidence. Frye v. Weber and Sons Serv. Repair, Inc. (1998),125 Ohio App.3d 507, 516. Therefore, our review is limited to determining whether the trial court abused its discretion. Id. citing Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes a judgment that is rendered with an unreasonable, arbitrary, or unconscionable attitude. Cedar Bay Constr., Inc. v. Fremont (1990),50 Ohio St.3d 19, 22. In determining whether an abuse of discretion exists, a reviewing court should presume that the trial court was correct. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138.
 {¶ 22} Juv.R. 27, dealing with juvenile hearings in general, allows the juvenile court to conduct its hearings "in an informal manner." See, also, R.C. 2151.35(A)(1). Regarding depositions, Juv.R. 25 states that "[t]he court upon good cause shown may grant authority to take the deposition of a party or other person upon such terms and conditions and in such manner as the court may fix." The use of the word "may" indicates that the trial court has discretion to allow or disallow depositions and to control the manner and terms under which depositions are taken. In re Vaughn (Aug. 13, 1990), Butler App. No. CA89-11-162.
 {¶ 23} As well, the rules of civil procedure apply to permanent custody proceedings to the extent that they are not clearly inapplicable. See In re Hale, Belmont App. No. 01-BA-21, 2002-Ohio-1153. Civ.R. 32 governs the use of depositions in all court proceedings and makes no distinction between discovery and trial depositions. See Frye
citing Van Meter v. Coates (Aug. 12, 1992), Lorain App. No. 91CA005220.
 {¶ 24} Pertinent to appellant's assignment of error, Civ.R. 32(A) states that "any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were present and testifying, may be used against any party who was present or represented at the taking of the deposition." Civ.R. 32(A)(3) states that the deposition of a witness "may be used by any party for any purpose," if the court finds that one of seven criteria apply. One of these criteria is "that the witness is an attending physician or medical expert, although residing within the county in which the action is heard[.]" Civ.R. 32(A)(3)(e).
 {¶ 25} In the instant case, Dr. Cresci qualifies as a medical expert and his deposition testimony is thus admissible pursuant to Civ.R. 32(A)(3)(e). We further note that appellant's counsel was present at the taking of the deposition and had an opportunity to cross-examine the witness, as well as to record his objections. Indeed, of the 28 pages of testimony, 26 pages are consumed with cross-examination. As well, in accordance with Civ.R. 32(C), appellant was not precluded from calling the psychiatrist as a witness in order to conduct further cross-examination.[1]
 {¶ 26} We find no abuse of discretion in the trial court's ruling which permitted Dr. Cresci's deposition to be admitted. Accordingly, the second assignment of error is overruled.
Assignment of Error No. 3
"The trial court should have allowed the parent, Brian Mraz, the right to replace counsel before proceeding with the final permanent custody hearing."
 {¶ 27} In his final assignment of error, appellant contends that he was denied his Sixth Amendment right to effective assistance of counsel because the trial court denied his request to discharge his appointed counsel. At the final permanent custody hearing, appellant informed the trial court that he had filed a disciplinary grievance against his counsel and requested a continuance to obtain new counsel.
 {¶ 28} The right to counsel guaranteed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution does not necessarily guarantee counsel of one's own choosing. State v. Marinchek (1983), 9 Ohio App.3d 22, 23-24. Rather, the right to counsel must be tempered by the public's right to a prompt, orderly and efficient administration of justice. Id. "Attorneys cannot be shed at every stage of the proceeding so as to impede that orderly administration. On the other hand, there is a right to discharge counsel because of the personal nature of the services being performed. Thus, it is the trial court's duty to balance the defendant's right to counsel against the public interest in the administration of justice." Id.
 {¶ 29} To warrant substitution of counsel, a defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict. State v. Davis (June 4, 1997), Ross App. No. 96CA2181, unreported. When an indigent defendant challenges the effectiveness and adequacy of assigned counsel, the trial court has an affirmative duty to inquire into the defendant's complaint and make the inquiry a part of the record. State v. Deal (1969),17 Ohio St.2d 17, 20. Further, where the trial court knows, or reasonably should know, of counsel's possible conflict of interest, the court has an affirmative duty to inquire whether an actual conflict exists. State v.Gillard (1992), 64 Ohio St.3d 304, syllabus.
 {¶ 30} However, the decision whether to appoint substitute counsel rests within the sound discretion of the trial court. State v. Dukes
(1986), 34 Ohio App.3d 263. We will not reverse a trial court's decision on this issue absent an abuse of discretion. Id. We again note that the term "abuse of discretion" connotes a decision that is "unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 31} A review of the record in the instant case reveals that appellant was first represented by retained counsel who was discharged. Appellant then retained new counsel whom he fired during the first permanent custody hearing. He was then appointed counsel when he failed to timely retain private counsel. By the time of the next hearing on the permanent custody motion, appellant had retained counsel and thus had dual representation. However, at the outset of this hearing he informed the trial court that he desired to discharge his appointed counsel. The trial court denied the request noting appellant's history of discharging counsel. Indeed, at the next hearing, appellant discharged his retained counsel.
 {¶ 32} At the same hearing, appellant also attempted to discharge his appointed counsel asserting that he had filed a disciplinary grievance against him. The trial court asked appellant the basis for his grievance and discovered that he could only vaguely assert that appointed counsel failed to "represent him fully." Upon further inquiry the trial court determined that the attorney had not been served with the grievance nor had he received any notice of the filing. The trial court denied counsel's request to withdraw, instead requiring appellant's appointed counsel to remain on the case so that the permanent custody hearing could finally proceed.
 {¶ 33} Upon review of the record, we conclude that the trial court's decision was not unreasonable, arbitrary or unconscionable. While appellant's filing of a grievance might give rise to a possible conflict of interest, there was no indication at the hearing that an actual conflict did, or would, exist. Accord State v. Heyward (May 18, 1998), Pickaway App. No. 96CA42. The United States Constitution is violated by an actual conflict of interest, not a possible one. State v. Gillard,78 Ohio St.3d 548, 552, 1997-Ohio-183, citing Cuyler v. Sullivan (1980),446 U.S. 335, 348-350, 100 S.Ct. 1708.
 {¶ 34} We further note that it is apparent from the record that appellant's appointed counsel had been actively representing appellant's interest. The hearing transcript reflects that counsel vigorously represented appellant at the hearing and that he was fully apprised of the issues and the facts involved in the case. Accordingly, the third assignment of error is overruled.
Judgment affirmed.
POWELL and VALEN, JJ., concur.
[1] ". . . The use of subdivision (A)(3)(e) of this rule does not preclude any party from calling such a witness to appear personally at the trial nor does it preclude the taking and use of any deposition otherwise provided by law."