DECISION
{¶ 1} Relator, Marilyn D. Hawkes, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted the motion of respondent, Rhoads Farm Market, for reconsideration and vacated the allowance of relator's claim and ordering the commission to reinstate its order allowing relator's claim.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision. Neither respondent has filed a memorandum contra.
 {¶ 3} Relator presents two objections. Relator first asserts that, in concurring with the commission's order, the magistrate cited the wrong standard necessary to prove proximate cause between her injury and her employment, pointing to the following finding by the magistrate:
* * * As the commission stated in its November 9, 2004 order, Dr. McNally's opinion was not legally sufficient to support the allowance of the claim and the doctor's statement did not establish, to a reasonable degree of medical certainty, that relator's infectious disease was actually caused by her job duties.
(Emphasis added.) The commission found Dr. McNally's report did not establish a causal relationship between relator's medical condition and her work to a "reasonable degree of medical probability." Relator maintains that she was required to prove only that the greater weight of the evidence showed that the medical condition was "probably" related to her work and, thus, it was inappropriate for the magistrate to find that the commission properly considered the case when the magistrate believed that the claimant was required to prove causation within a reasonable degree of medical "certainty."
 {¶ 4} In order to establish a right to a workers' compensation benefit for harm resulting from an accidental injury, it is necessary for the claimant to show, by a preponderance of the evidence, that a causal relationship existed between his injury and the harm. Fox v. Indus.Comm. (1955), 162 Ohio St. 569. Thus, when expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection. See Stacey v. Carnegie-Illinois Steel Corp. (1951),156 Ohio St. 205; Pfister v. Indus. Comm. (1942), 139 Ohio St. 399. However, the expert's testimony need not include the magic word "probability" but, when reviewed in its entirety, it must be equivalent to an expression of probability. Schroeder v. Parker (Dec. 10, 1998), Cuyahoga App. No. 73907. Although the requirement that an expert opinion be stated with reasonable "certainty" seems to require something more than "probability," "reasonable certainty" has been interpreted to mean "probability" when used in the context of proximate cause. Frye v. Weber Sons Serv. Repair, Inc. (1998), 125 Ohio App.3d 507, 514 (doctor's testimony to a reasonable degree of medical certainty as to whether claimant's employment was proximate cause of injury satisfied the requirement that an expert opinion be stated in terms of probability);Ruge v. Conrad (Sept. 26, 1997), Clark App. No. 97 CA 0015, citing Statev. Benner (1988), 40 Ohio St.3d 301, 313, and State v. Holt (1969),17 Ohio St.2d 81, 85. Therefore, the magistrate's use of the term "certainty" instead of "probability" in the present case was of no consequence, and relator's first objection is without merit.
 {¶ 5} Relator argues in her second objection that the magistrate erred when she found the commission provided a second valid reason for granting reconsideration; that is, because relator's bacterial infection was an injury and not an occupational disease, relator's application had been filed beyond the two-year statute of limitations. Relator contends that, when the commission granted reconsideration, the only reason it cited in its order was the deficiency of the medical evidence with regard to causation. Relator claims she was never apprised that the commission was considering this second theory. However, given our determination that the commission's determination regarding proximate cause was not in error, relator's second objection is moot.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule relator's first objection, find her second objection moot, and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ of mandamus denied.
BRYANT and McGRATH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Marilyn D. Hawkes,:
Relator, :
v. : No. 05AP-47
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Rhoads Farm Market,
Respondents. :
 MAGISTRATE'S DECISION Rendered on June 23, 2005 Agee, Clymer, Mitchell Laret, and Robert M. Robinson, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Buckingham, Doolittle Burroughs, LLP, Brett L. Miller, Richard A.Hernandez and Michael L. Williams, for respondent Rhoads Farm Market.
 IN MANDAMUS {¶ 7} Relator, Marilyn D. Hawkes, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted the motion of respondent Rhoads Farm Market ("employer") for reconsideration and vacated the allowance of relator's claim and ordering the commission to reinstate its order allowing relator's claim.
 Findings of Fact: {¶ 8} 1. On November 12, 2003, relator filed an application with the Ohio Bureau of Workers' Compensation ("BWC") alleging that she had contracted a mycobacterial infection and joint disorder caused by exposure to the bacteria in the soil where she worked.
 {¶ 9} 2. The record contains two reports by Dr. Cora F. McNally. In her February 12, 2004 letter, Dr. McNally opined as follows:
* * * After a lot of workup and numerous surgeries, she was finally diagnosed as having a Mycobaterium avium complex infection, which is an organism in the family of tuberculosis and lives in soil and water. It seems very probable that this exposure was contracted through her duties in her occupation as a horticulturist. She readily admits that she had been dealing with a lot of roses and shrubs when she initially developed pain and swelling of her left hand and 4th finger. An individual might be expected to contact this infection if there was a scratch on her finger and consequently the organism entered by means of the soil. * * *
In her April 13, 2004 letter, Dr. McNally opined:
* * * Mycobacterium avium complex is ubiquitous in all environments and has been isolated from a variety of sources around the world, including soil, natural water, municipal water systems, food, house dust and domestic and wild animals. * * * I suspect her work as a horticulturist for a greenhouse played the key role. I suspect Marilyn sustained a prick on her wrist or finger. The soil was contaminated with a Mycobacterium avium complex organism and it entered her wrist/finger by means of the soil. * * *
 {¶ 10} 3. Relator's application was originally denied by order of the BWC mailed December 11, 2003.
 {¶ 11} 4. Thereafter, relator's application was heard before a district hearing officer ("DHO") on June 1, 2004, and resulted in an order denying the claim on the basis that the medical evidence as well as claimant's testimony revealed that the injury occurred in March 2001. However, because relator had waited until December 2003 to file her claim, the DHO denied the claim on the basis that it exceeded the two-year statute of limitations.
 {¶ 12} 5. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on July 21, 2004. The SHO vacated the prior DHO order and allowed the claim as follows:
This is not an injury claim but an occupational disease claim. The date of diagnosis is May 28, 2003.
The injured worker had symptoms of the micro bacteria infection for several years, had several surgeries by highly respect[ed] specialists who could not understand her symptoms or what caused her symptoms. The specialist sent her to an infectious disease specialist who was able to provide [the] diagnosis of her condition.
Dr. Cora F. McNally, M.D., (Board Certified Infectious Disease Specialist) first saw the injured worker on 05/26/2003 as referral from the [sic] Dr. Lubbes who had diagnosed tenosynovitis of left wrist.
Dr. McNally notes "after a lot of workup and numerous surgeries, she was finally diagnosed as having MYC-OBACTERIUM AVIUM COMPLEX INFECTION, which is an organism in the family of tuberculosis and lives in soil and water. It seems probable that this exposure was contracted through her duties in her occupation as a horticulturist. An individual might be expected to contact this infection if there was [a] scratch on her finger and consequently the organism enters by means of the soil". At hearing[,] the injured worker testified that she had been employed with the employer of record since she graduated from college. She further testified that [s]he transferred rose bushes using the soil and that the only homes that she went to were at the request of her employer to diagnosis [sic] rose bush infections. She did not have any time to volunteer for any other garden projects and in fact she did not even have a garden.
The Staff Hearing Officer finds that the injured worker was exposed to the organism through her employment which later developed into an infection.
It is the order of the Staff Hearing Officer that this claim is allowed for "MYCOBACTERIUM AVIUM COMPLEX INF-ECTION WITH INFECTION IN THE LEFT EYE, LEFT HAND". The Staff Hearing Officer relies upon Dr. McNally['s] medical report and the testimony of the injured worker [and] is allowing the claim.
(Emphasis sic.)
 {¶ 13} 6. The employer's appeal was refused by order of the commission mailed August 12, 2004.
 {¶ 14} 7. Thereafter, the employer filed a motion for reconsideration.
 {¶ 15} 8. By interlocutory order mailed September 30, 2004, the commission determined as follows:
It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer relied upon a medical report that failed to establish a causal relationship.
The order issued 08/12/2004 is hereby vacated. Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 08/26/2004 is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 {¶ 16} 9. Thereafter, the matter was heard before the commission on November 9, 2004, and resulted in an order denying relator's claim for the following reasons:
It is the finding of the Industrial Commission that the order of the Staff Hearing Officer, dated 07/21/2004, is based on a clear mistake of fact and a clear mistake of law of such character that remedial action would clearly follow, and that the exercise of continuing jurisdiction under R.C. 4123.52 is appropriate in this case. The Staff Hearing Officer found that the injured worker developed an occupational disease as a result of her employment as a horticulturist with the named employer. The Staff Hearing Officer relied on the 02/12/2004 report of Dr. McNally to establish a causal work relationship between her described incident on the date of injury and the resultant diagnosis of mycobacterium avium complex infection with infection in the left eye, left hand.
Dr. McNally's 02/12/2004 report does not establish a causal relationship between the injured worker's medical condition and her work to a reasonable degree of medical probability. Dr. McNally's statements in the report that it seems very probable that the injured worker's "exposure to the myco-bacterium avium complex organism was contracted through her job duties in her occupation as a horticulturist," and that "(a)n individual might be expected to contact this infection if there was a scratch on her finger and consequently the organism entered by means of the soil," do not establish to a reasonable degree of medical probability that the injured worker's infectious disease was actually caused by the injured worker's job duties. Because the 02/12/2004 report was legally insufficient to support the allowance of the claim, and no other evidence on file supports a finding of a causal relationship between the injured worker's infectious disease and her job duties, sufficient grounds exist for the Industrial Commission to reconsider the Staff Hearing Officer's 07/21/2004 decision allowing the claim.
The injured worker's 12/09/2003 FROI-1 application is denied.
The injured worker alleged in her FROI-1 application that she sustained a prick injury from a rose bush on her left index finger on 03/01/2001. Evidence in the file indicates that bacteria may have entered the bloodstream as a result of a puncture injury, and an infection thereafter developed. Based on the injured worker's description of injury, while it is clear that the injured worker developed an infectious process, purportedly as a result of the 03/01/2001 incident, the source of the infection was alleged to be an injury, that is, a puncture wound to her left index finger. Therefore, the Industrial Commission finds that this claim is properly classified as an injury claim, rather than an occupational disease claim.
Because this is an injury claim, pursuant to R.C. 4123.84 the injured worker had two years from the date of injury, 03/01/2001, to file her claim. The injured worker does not dispute that she filed her claim on 12/09/2003, well after two years from the alleged date of injury. Consequently, the claim is denied on the basis that it was not timely filed.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 18} The sole issue presented by relator's mandamus action concerns relator's assertion that the commission abused its discretion by granting the employer's motion to reconsider the allowance of relator's claim. Specifically, relator first asserts that the employer's request for reconsideration came after the commission's order mailed August 12, 2004, refusing the employer's further appeal. As such, relator contends that the employer's request for reconsideration must relate only to the order mailed August 12, 2004, and that it cannot relate to the SHO order dated July 21, 2004. Furthermore, relator contends that the alleged error in the present case was not "clear" and that, pursuant to State ex rel.Gobich v. Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, the commission abused its discretion. For the reasons that follow, the magistrate finds that relator's arguments lack merit and a writ of mandamus is not appropriate.
 {¶ 19} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In State ex rel.B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538, 541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:
R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See,e.g., State ex rel. Gatlin v. Yellow Freight System, Inc. (1985),18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston
(1979), 58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v.Indus. Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State ex rel.Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164 * * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Mannsv. Indus. Comm. (1988), 39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); andState ex rel. Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85
* * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
See, also, State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454.
 {¶ 20} In the present case, the commission indicated that it was asserting continuing jurisdiction based upon a clear mistake of law. However, one of relator's arguments is that the mistake was not "clear." In Gobich, the Supreme Court of Ohio reiterated that the commission's reason for exercising its continuing jurisdiction must be both identified and explained and that a legitimate disagreement regarding evidentiary interpretation does not mean that one was mistaken and does not, at a minimum, establish that an error was clear.
 {¶ 21} In the present case, the magistrate finds that the commission identified and explained a clear mistake of law. In Dr. McNally's report, she indicated that "[i]t seems very probable that this exposure was contracted through her duties in her occupation as a horticulturist," and that "[a]n individual might be expected to contact this infection if there was a scratch on her finger and consequently the organism entered by means of the soil." (Emphasis added.) As the commission stated in its November 9, 2004 order, Dr. McNally's opinion was not legally sufficient to support the allowance of the claim and the doctor's statement did not establish, to a reasonable degree of medical certainty, that relator's infectious disease was actually caused by her job duties. Finding that the SHO had applied the wrong legal standard, the commission properly exercised continuing jurisdiction. Furthermore, the commission denied relator's claim for a second equally valid reason. Finding that the SHO improperly determined that the bacterial infection was an occupational disease and not an injury, the SHO had determined that relator's application was timely filed. On review, the commission determined that, similar to other cases, relator's infection constitutes an injury, not an occupational disease, and that relator's application had not been timely filed. These are both valid reasons for exercising the continuing jurisdiction of the commission.
 {¶ 22} Relator also contends that the employer's request for reconsideration, having been filed after the August 12, 2004 order of the commission refusing the employer's appeal, did not properly focus on the SHO order of July 21, 2004. However, the magistrate finds that in the employer's request for reconsideration, the employer did cite to the July 21, 2004 SHO order and the entire focus of the motion for reconsideration was on alleged errors made during the evidentiary hearings.
Commission Resolution R98-1-03 provides, in pertinent part, as follows:
* * * [T]he following guidelines shall be adopted by the Industrial Commission and shall apply to requests for reconsideration of final Commission decisions:
A. A party to a claim who desires to file a request for reconsideration of a Commission decision must file the request for reconsideration within fourteen days from the date of receipt of:
1. An order issued by the members of the Industrial Commission;
2. A final order issued by a staff hearing officer except for an order issued by a staff hearing officer under Section 4121.35(B)(2) and Section4123.511(D) of the Ohio Revised Code; or
3. An order issued pursuant to Section 4123.511(E) of the Ohio Revised Code refusing to hear an appeal from a decision of a staff hearing officer issued under Section 4123.511(D) of the Ohio Revised Code.
B. All requests for reconsideration shall be accompanied by the following:
1. A recitation of the specific grounds upon which re-consideration is sought; and
2. Copies of the relevant orders of the Administrator and the Commission from which reconsideration is sought as well as any other underlying orders addressing the issue in controversy; and
3. Copies of relevant documents and proof and, where appropriate, citations to the legal authorities relied upon to support the request for reconsideration.
Failure to attach all the documents outlined in Section (B) may result in a denial of the reconsideration request.
C. A copy of the request for reconsideration shall be sent to the opposing party and opposing party's authorized representative by the party that requests reconsideration at the time the request for reconsideration is filed with the Industrial Commission. Should the opposing party desire to reply, the written reply must be filed with the Commission within fourteen days of that party's receipt of the request for reconsideration.
D. If the requirements of Sections (A) and (B) are satisfied, hearing officers designated by the Commission shall review the request for reconsideration pursuant to the following criteria:
1. A request for reconsideration shall be considered only in the following cases:
a. New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. Newly discovered evidence shall be relevant to the issue in controversy but shall not be merely corroborative of evidence that was submitted prior to the date of the order from which reconsideration is sought.
b. There is evidence of fraud in the claim.
c. There is a clear mistake of fact in the order from which reconsideration is sought.
d. The order from which reconsideration is sought contains a clear mistake of law of such character that remedial action would clearly follow.
e. There is an error by the inferior administrative agent or subordinate hearing officer in the order from which reconsideration is sought which renders the order defective.
 {¶ 23} Although relator only focuses on subsection d, it is apparent from reading subsection b that requests for reconsideration are to be accompanied by a recitation of the specific grounds and copies of the relevant orders from which reconsideration is sought as well as any other underlying orders addressing the issue in controversy. Further, in Stateex rel. Wheeler v. Indus. Comm., Franklin App. No. 02AP-865, 2003-Ohio-3120, this court held that the above resolution makes it clear that a party may seek reconsideration of any and all orders in the sequence. This court held further that a party may seek reconsideration of multiple orders and not only the refusal order. As such, contrary to relator's argument, the fact that the employer filed its request for re-consideration following the commission's denial of the employer's appeal, the employer was still capable of filing a motion for reconsideration addressing deficiencies in the earlier SHO order of July 21, 2004, allowing relator's claim. As such, the magistrate finds that relator's narrow reading of the commission's resolution and its impact on the continuing jurisdiction of the commission is inaccurate.
 {¶ 24} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in exercising its continuing jurisdiction as the July 21, 2004 commission order contained a clear mistake of law and relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.