[Cite as *Vactor v. Franklin Blvd. Nursing Home, Inc.*, 2021-Ohio-945.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

WILLIAM VACTOR, INDIVIDUALLY,
& AS ADMR., ETC.,                           :

   Plaintiff-Appellant,  :

            No. 109708

   v.       :

FRANKLIN BLVD. NURSING HOME,
INC., ET AL.,                               :

   Defendants-Appellees. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 25, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-876920

---

## *Appearances:*

Goldstein & Goldstein Co., L.L.C., Michael D. Goldstein, and Brandon J. Harris, *for appellant.*

Bonezzi Switzer Polito & Hupp Co., L.P.A., Bret C. Perry, and Brian F. Lange, *for appellee* Jennifer Saenz, CNP.

Lewis Brisbois Bisgaard & Smith, L.L.P., Thomas P. Mannion, Thomas H. Terry, III, and Daniel A. Leister, *for appellees* Franklin Boulevard Nursing Home, Inc., Franklin Plaza Extended Care, and Legacy Health Services.

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant William Vactor, individually, and as administrator of the estate of Regina Vactor ("Vactor"), challenges the trial court's judgment entry granting summary judgment on its claims for wrongful death, survivorship, and violation of Ohio's Nursing Home Patients Bill of Rights. After a thorough review of the law and facts, we reverse the judgment of the trial court and remand for further proceedings.

## I. Factual and Procedural History

{¶ 2} The decedent, Regina Vactor ("Regina"), was a resident of appellee Franklin Plaza Nursing Home ("Franklin Plaza") for nearly two years. On June 9, 2016, she was sent to the psychiatric emergency room at St. Vincent's Hospital as a result of concerns about combative behavior and a possible altered mental state. Regina was also lethargic and physically unstable.

{¶ 3} At the hospital, the staff observed Regina for several hours and obtained lab work. The lab results were ultimately normal, and the hospital staff determined that Regina was medically stable but was having a psychotic episode. Regina was thus returned to Franklin Plaza the following morning, June 10, 2016.

{¶ 4} Throughout the day of June 10, Regina continued to demonstrate lethargy and confusion and placed herself on her bedroom floor. Nurse Elizabeth Grandee ("Grandee") was responsible for Regina's care during the June 10th day shift. Grandee noted that Regina seemed unable to complete a thought. She asked appellee Jennifer Saenz, CNP ("Saenz"), to examine Regina and also asked Saenz if

Regina could be sent back to the emergency room. According to Grandee, Franklin Plaza's unwritten policy was that nurses were not permitted to send residents to the emergency room due to the transport fees.

{¶ 5} After examining Regina, Saenz determined that there was nothing medically that would require Regina to be sent again to the hospital. Saenz ordered bloodwork, but it was never completed due to Regina being uncooperative. Saenz directed Grandee to "wait it out another day."

{¶ 6} In the evening of June 10, 2016, Regina was still lethargic, refusing medications, and experiencing mental status changes. The Franklin Plaza nurses attempted to calm her by injecting her with Lorazepam twice, which causes drowsiness.

{¶ 7} The following day, June 11, 2016, Grandee was again the nurse in charge of Regina's care and was also acting as the facility supervisor. Regina was acting aggressive and was medicated with Ativan several times. She again placed herself on her bedroom floor and refused to get up. In addition, she did not eat or drink anything all day. Her speech was unclear, and she never opened her eyes that day.

{¶ 8} Grandee last checked on Regina around 5:00 p.m. and found her awake, lying on her right side on the floor. Grandee inquired as to whether Regina wanted to come to dinner or have a drink, and Regina told her to leave her alone. Grandee then left. Around this same time, STNA Makia Jones noticed that Regina's breathing was labored and thought perhaps her nose was blocked. STNAs Tammy Mundy and Isabel Huff thought that she should go to the emergency room.

{¶ 9} Grandee requested multiple times that Saenz authorize sending Regina to the hospital but was refused each time. Grandee also asked the facility's director of nursing, who deferred to Saenz.

{¶ 10} Approximately one hour later, Vactor arrived at the nursing home, found his mother face down on her bedroom floor, and realized she was not breathing. 911 was called, and EMTs arrived, but Regina was unable to be resuscitated. She was taken to the hospital and pronounced dead.

{¶ 11} An autopsy was requested but never performed. Cuyahoga County Deputy Medical Examiner Dan Galita, M.D., completed the death certificate based upon a review of Regina's medical records. The cause of death was listed as epileptic seizure, and hypertensive cardiovascular disease was cited as another significant condition contributing to death but not resulting in the underlying cause.

{¶ 12} Vactor filed suit, alleging wrongful death and survivorship claims against Franklin Boulevard Nursing Home, Inc., Franklin Plaza Extended Care, and Legacy Health Services ("the Franklin appellees") sounding in negligence and for violations of Ohio's Nursing Home Patients Bill of Rights, R.C. 3721.17(I), against Franklin Plaza. Vactor later amended his complaint keeping the same claims but adding Saenz as a defendant.

{¶ 13} Following discovery, the Franklin appellees filed a motion for summary judgment, focusing solely on the causation element of Vactor's medical negligence claim. Specifically, appellees asserted (1) that Vactor's expert, Dr. Stall, failed to establish cause of death to a reasonable degree of medical certainty; and

(2) that Vactor cannot overcome the presumption that the medical examiner's cause and manner of death are legally conclusive. Saenz filed her own motion arguing that Vactor did not present expert testimony regarding the cause of Regina's death, which is fatal to Vactor's claim. Saenz further contends that the intervening and superseding act of negligence by the Franklin appellees proximately caused Regina's death, and she is entitled to judgment as a matter of law.

{¶ 14} In his briefs in opposition, Vactor argued that he had produced sufficient evidence in support of his claim in that his expert, Dr. Stall, stated the causation and cause of death of the decedent to a reasonable degree of medical certainty. Further, Vactor contends that, through Dr. Stall's testimony and expert report, he presented sufficient evidence to overcome the presumption of the validity of the medical examiner's cause-of-death determination.

{¶ 15} The trial court granted the Franklin appellees' and Saenz's motions, finding that Vactor did not establish that the Franklin appellees or Saenz breached any standard of care of the medical community. Further, the court held that Vactor offered no expert testimony that established a direct causal connection between the alleged negligent acts and Regina's death. Vactor then filed the instant appeal, raising two assignments of error for our review:

> I. The trial court erred in granting summary judgment for Defendants Franklin Boulevard Nursing Home, Inc., Franklin Plaza Extended Care and Legacy Health Services.
>
> II. The trial court erred in granting summary judgment for Defendant Jennifer Saenz, CPN.

## II. Law and Analysis

## A. Standard of Review

{¶ 16} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), the Supreme Court of Ohio set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*[, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995)], paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*[, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996)].

{¶ 17} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

## B. The Franklin Appellees' Motion for Summary Judgment

{¶ 18} In his first assignment of error, Vactor argues that the trial court erred in granting summary judgment in favor of appellees. Specifically, Vactor makes the following arguments: (1) Vactor presented sufficient evidence for jury consideration of his medical negligence claims against appellees; (2) the trial court did not apply the appropriate standard of review for summary judgment review of expert opinions; and (3) the trial court erred when it granted summary judgment on the issue of standard of care, which was not briefed or argued by appellees in their motion.

{¶ 19} "To prevail on a claim of medical malpractice, a plaintiff must establish through expert testimony the acceptable medical standard of care, the defendant's breach of that standard, and that the breach proximately caused the plaintiff's injuries." *Schura v. Marymount Hosp.*, 8th Dist. Cuyahoga No. 94359, 2010-Ohio-5246, ¶ 27, citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976).

{¶ 20} As it relates to causation, the general rule that "'the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence.'" *Drew-Mansfield v. MetroHealth Med. Ctr.*, 8th Dist. Cuyahoga No. 102254, 2015-Ohio-3033, ¶ 15, quoting *Wilson v. Kenton Surgical Corp.*, 141 Ohio App.3d 702, 705, 753 N.E.2d 233 (3d Dist.2001), citing *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 668 N.E.2d 480 (1996). Consequently, to

establish proximate cause, a plaintiff is required to introduce evidence demonstrating that it was a probability the medical staff's alleged negligence was the cause of the claimant's injury. *Drew-Mansfield* at *id.*, citing *Wilson* at 705-706.

{¶ 21} The Franklin appellees presented the verdict of the medical examiner, which stated the cause of death as "epileptic seizure with [another] condition of hypertensive cardiovascular disease." R.C. 313.19 provides as follows:

> The cause of death and the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict and in the death certificate filed with the division of vital statistics, shall be the legally accepted manner and mode in which such death occurred, and the legally accepted cause of death, unless the court of common pleas of the county in which the death occurred, after a hearing, directs the coroner to change his decision as to such cause and manner and mode of death.

{¶ 22} In construing the above statute, the Supreme Court of Ohio has held that "[t]he coroner's factual determinations concerning the manner, mode and cause of death, as expressed in the coroner's report and the death certificate, create a nonbinding rebuttable presumption concerning such facts in the absence of competent, credible evidence to the contrary." *Vargo v. Travelers Ins. Co.*, 34 Ohio St.3d 27, 516 N.E.2d 226 (1987), paragraph one of the syllabus.

{¶ 23} The Franklin appellees contend that Vactor has not presented any contrary evidence regarding the cause of Regina's death. Specifically, they assert that Vactor's causation expert, Dr. Stall, was unable to identify the cause of Regina's death.

{¶ 24} Vactor argued in his brief in opposition to the motion for summary judgment that Dr. Stall disagreed with the cause of death noted by the medical examiner and that the Franklin appellees' expert, Dr. Morganstern, also agreed that an epileptic seizure was unlikely to be the cause of Regina's death.

{¶ 25} The initial expert report provided by Dr. Stall did not opine as to the causation element.  Dr. Stall then submitted an expert report addendum, which stated as follows:

> Based on further review, including review of Dr. Morgenstern's expert report, more likely than not [Regina's] death was not seizure related, but due to new or pre-existing cardiorespiratory disease.

> In addition, based on the post-mortem laboratory analysis, [Regina] was dehydrated at the time of her death, which more likely than not also contributed to her death.

{¶ 26} Dr. Stall was subsequently deposed and, in response to questioning by the opposing counsel as to the cause of Regina's death, he stated that he "[did] not know the specific disease entity."

{¶ 27} In focusing on the specific medical cause of Regina's death, the parties and the trial court neglected to address the actual issue of proximate cause as it related to the staff of Franklin Plaza.

{¶ 28} The establishment of proximate cause through

> "medical expert testimony must be by probability.  At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. *See Cooper v. Sisters of Charity*, 27 Ohio St.2d [242,] 252, [272 N.E.2d 97 (1971)].  Opinions expressed with a lesser degree of certainty must be excluded as speculative.  (Footnote omitted.)"

*O'Connor v. Fairview Hosp.*, 8th Dist. Cuyahoga No. 98721, 2013-Ohio-1794, ¶ 27, quoting *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (1986).

{¶ 29} We therefore must evaluate Dr. Stall's report and deposition testimony to determine whether it demonstrates proximate cause in terms of "more likely than not." In his initial expert report, Dr. Stall concluded with the following statement:

> It is my opinion, within a reasonable degree of medical certainty, that Ms. Regina Vactor, who was experiencing significant changes from baseline according to facility staff and family witnesses, was not transferred to the hospital in a timely basis by facility staff, which more likely than not contributed to her death on June 11, 2016.

{¶ 30} Moreover, at his deposition, Dr. Stall was directly asked by Vactor's counsel, "Is it more likely than not in light of the conditions that you saw that had she been transferred to an acute hospital setting in a timely manner by nursing staff on June 11th, 2016, that Regina Vactor would have likely had a successful outcome?" *Id.* at 111-112. Dr. Stall responded, "I do believe so, yes." *Id.*

{¶ 31} Dr. Stall further stated that Regina required emergency medical care on the day of her death and that the "delay in care and in getting her transferred to the ER more likely than not caused her death." *Id.* at 63.

{¶ 32} Accordingly, we find that Vactor has submitted sufficient evidence to establish a jury issue that the failure to send Regina to the hospital caused her death. The trial court therefore erred in granting summary judgment in favor of the Franklin appellees. Vactor's first assignment of error is sustained.

## C. Saenz's Motion for Summary Judgment

{¶ 33} In Vactor's second assignment of error, he argues that the trial court erred in granting summary judgment in favor of Saenz. Vactor sets forth several arguments in support of this assignment of error, to wit: (1) he presented sufficient evidence of his medical negligence claim against Saenz; (2) the trial court did not apply the appropriate standard of review of the submitted expert opinions; (3) the trial court granted summary judgment on the issue of standard of care, which was not argued and/or briefed by the movant; and (4) the trial court improperly refused to consider the expert report of Carol White, DNP, RN, which had been authenticated as an exhibit at her deposition and was part of the record in this matter.

{¶ 34} We find this assignment of error has merit for the same reasoning discussed above. Vactor has submitted sufficient evidence to establish a jury issue that the failure to send Regina to the hospital, at Saenz's direction, caused her death. Accordingly, summary judgment in favor of Saenz was improper, and Vactor's second assignment of error is also sustained.

## III. Conclusion

{¶ 35} The trial court erred in determining that Vactor had failed to provide sufficient evidence to demonstrate that the actions of the staff of Franklin Plaza, including Saenz, proximately caused the death of Regina Vactor. Accordingly, we sustain both of Vactor's assignments of error.

{¶ 36} Summary judgment in favor of the Franklin appellees and Saenz is reversed, and the case is remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR